IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–01615–CMA–MDB

PLAINS DEDICATED FINANCE LLC a/k/a NORMAN WILLIAMS,

    Plaintiff,

v.

PETERBILT MOTORS COMPANY, a division of PACCAR INC., and
CUMMINS, INC.,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Defendant Peterbilt Motors Company, a division of

PACCAR, Inc[1] ["PACCAR"] and Defendant Cummins, Inc.'s ["Cummins"] Motions to Dismiss.

([collectively the "Motions"]; Doc. Nos. 10; 28.) Plaintiff has not responded to either Motion,

and the time to do so has lapsed. Upon consideration of the Motions, the docket, the applicable

rules and case law, and being otherwise fully advised, the Court recommends **GRANTING** the

Motions to Dismiss **in part**.

## STATEMENT OF THE CASE

---

[1] In the Complaint Plaintiff alleges that Peterbilt Motors Company is a "division of PACCAR, Inc., a foreign profit corporation" doing business in Colorado. (Doc. No. 3 at 1–2.) Defendant PACCAR confirms this in its Motion to Dismiss. (Doc. No. 10 at 1.) For consistency, the Court will refer to this party as PACCAR or Defendant PACCAR, as this party does in its Motion to Dismiss. (*See generally id.*)

Plaintiff alleges that on or about June 3, 2021, it "purchased a new 2022 Peterbilt 389 truck, VIN: IXPXD49XXND782042, from an Authorized Dealership located in the State of Colorado."[2] (Doc. No. 3 at 2, Ex. A.) Plaintiff's purchase of the vehicle was accompanied by written warranties, including a "1 (one) year / 100,000 mile [PACCAR] chassis warranty and [a] 3 (three) year / 300,000 mile Cummins engine warranty." (Doc. No. 3 at 2.) Plaintiff states that "full warranties are in Defendant's possession."[3] (*Id.*) Plaintiff alleges that "Defendants' warranties covered any repairs or replacements needed during the warranty period and/or due to defects in factory materials or workmanship." (*Id.* at 2.)

Defendant PACCAR's warranty included the following "VEHICLE WARRANTY SCHEDULE":

---

[2] In the Complaint, Plaintiff refers to the Peterbilt 389 truck as the "Subject Vehicle" without further explanation. A review of Peterbilt's website indicates that a Model 389 is an over-the-road tractor vehicle intended to tow large trailers. *See Model 389* PETERBILT, https://www.peterbilt.com/trucks/highway/model-389. For consistency, the Court will use "Subject Vehicle" when addressing the Peterbilt 389 truck.

[3] Each Defendant included a copy of their warranty as an exhibit to their Motion to Dismiss. (*See* Doc. No. 10 Ex. A-1; Doc. No. 28 Ex. A-1.) Though not attached to the Complaint, because these warranties are central to Plaintiff's claims, and because Plaintiff has referenced them and not responded to dispute the warranties' authenticity, the Court will consider the warranties in its analysis of the Motions to Dismiss. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("The district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). In addition, each Defendant included sworn declarations by employees attesting to the accuracy of the warranty documents provided. (*See* Doc. No. 10 Ex. A; Doc. No. 28 Ex. A.)

THIS VEHICLE WARRANTY SCHEDULE APPLIES ONLY TO ORIGINAL FACTORY EQUIPMENT AND IS SUBJECT TO THE TERMS AND LIMITATIONS IN THE ATTACHED LIMITED WARRANTY AGREEMENT. Pursuant to the terms of the attached Limited Warranty Agreement, Peterbilt Motors Company will pay warranty claims for Warrantable Failures within the following maximum limits in time or mileage, **whichever shall occur first**. The Warrantable Failure must be brought to the attention of an Authorized Dealer within 30 days of discovery.

| | MONTHS | MILES |
|---|---|---|
| **Basic Vehicle**<br>This coverage applies to the basic highway Vehicle, except for additional coverage and warranty exclusions. | 12 | 100,000 |
| **Major Components**<br>Eaton, Meritor & Dana Spicer front axle (beam, spindles, kingpin & kingpin bushings, steering arm, tie rod & tie rod arms).<br>Eaton, Meritor & Dana Spicer rear axle, differential assembly, axle shafts & axle housing.<br>Manual transmissions<br>Eaton Auto Shift transmission<br>Bendix and Meritor brakes, brackets, cam shafts, spiders and slack adjusters (excludes Air Disc Brakes).<br>Structural components of the cab, hood, hood half fenders, and sleeper.<br>Sheppard and TRW Steering gears | 36 | 300,000 |
| **PACCAR Major Components**<br>Rear Axle 40K Line Haul<br>Rear Axle 40K Regional Haul or Pickup & Delivery<br>Front Axle - All Applications (Incl. Severe Service)<br>Transmission - All Applications<br>    Clutch - All Applications | 60<br>24<br>60<br>60<br>36 | 750,000<br>Unlimited<br>750,000<br>750,000<br>350,000 |
| **Frame, Gussets, Crossmembers and Cab Corrosion**<br>Frame rails, gussets, and crossmembers.<br>Cab, hood, and sleeper perforation caused by corrosion from within. This warranty does not apply to corrosion caused by damage to a cab, hood, and sleeper panel or to finish paint. | 60 | 500,000 |
| **Other Coverage** | | |
| SmartLINQ+ Components<br>Modem, antenna, and related remote diagnostic equipment. Coverage subject to maximum limits in time or mileage identified in this warranty agreement or, where applicable, for such greater time and mileage limit identified in any Extended Basic Vehicle, Extended MX Comprehensive, or MX Aftertreatment warranties covering the vehicle. | 24 | Unlimited |
| **PACCAR Batteries - Charge and Start System** | 12 | 100,000 |
| **Gaskets and Wheel Seals** | 12 | 50,000 |
| **Cab, Hood & Sleeper Paint** | 12 | 100,000 |
| **Frame Paint – Black only** | 12 | 100,000 |
| **Frame Paint – All colors other than black** | 6 | 50,000 |
| **Frame Paint – Logger, Mixer, Dump, Refuse, Oil Field & Construction applications** | 3 | 25,000 |

(Doc. No. 10 Ex. A-1.) [4] Defendant PACCAR's warranty also included the following disclaimer:

---

[4] The PACCAR warranty document also says that its warranty did not cover the following parts: "engine and engine accessories, Allison automatic transmission, fifth wheel, tires, wheels and rims, tubes, pintle hook, hitch, batteries not listed in the Vehicle Schedule, refrigerator, trade accessories … customer-furnished components installed by the Peterbilt factory, and items not installed by the Peterbilt factory at the time of the Vehicle's manufacture." (Doc. No. 10 Ex. A-1 at 1.)

> **WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY**
> **This limited warranty is the sole warranty made by Peterbilt . Except for the above limited warranty, Peterbilt makes no other warranties, express or implied.** PETERBILT EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
>
> IT IS AGREED THAT PETERBILT SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO: LOSS OF INCOME OR LOST PROFITS; VEHICLE DOWNTIME; THIRD PARTY DAMAGE, INCLUDING DAMAGE OR LOSS TO OTHER VEHICLES OR PROPERTY, ATTACHMENTS, TRAILERS AND CARGO; LOSS OR DAMAGE TO PERSONAL CONTENTS; COMMUNICATION EXPENSES; LODGING AND/OR MEAL EXPENSES; FINES; APPLICABLE TAXES OR BUSINESS COSTS OR LOSSES; ATTORNEY'S FEES; AND ANY LIABILITY YOU MAY HAVE IN RESPECT TO ANY OTHER PERSON OR ENTITY.

(*Id.*)

Likewise, Defendant Cummins' warranty indicated the following coverage:

## Coverage

### Products Warranted

This Warranty applies to new EPA 2010 and newer ISX11.9, ISX12, X12, ISX12 G, ISX12N, ISX15 and X15 Series Engines sold by Cummins Inc. and delivered to the first user on or after October 1, 2009, that are used in automotive on-highway applications in the United States* and Canada, except for Engines used in bus and coach, recreational vehicle and fire apparatus/crash truck applications, for which different Warranty Coverage is provided.

### Base Engine Warranty

The Base Engine Warranty covers any failures of the Engine which result, under normal use and service, from defects in Cummins material or factory workmanship (Warrantable Failure). This Coverage begins with the sale of the Engine by Cummins and ends two years or 250,000 miles (402,336 kilometers) or 6,250 hours of operation, whichever occurs first, after the date of delivery of the Engine to the first user. Engine aftertreatment components included in the Cummins Critical Parts List (CPL) and marked with a Cummins part number are covered under Base Engine Warranty. Additional Coverage is outlined in the Emission Warranty section. **These Warranties are made to all Owners in the chain of distribution and Coverage continues to all subsequent Owners until the end of the periods of Coverage.**

(Doc. No. 28 Ex. A-1.) Defendant Cummins' warranty also included the following disclaimer:

**CUMMINS IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

**THIS WARRANTY AND THE EMISSION WARRANTY SET FORTH HEREINAFTER ARE THE SOLE WARRANTIES MADE BY CUMMINS IN REGARD TO THESE ENGINES. CUMMINS MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

(*Id.*)

In the case of a defect, both warranties limit Defendants' obligations to repair or replace the offending part—assuming it is covered. (*See* Doc. No. 10 Ex. A-1; Doc. No. 28 Ex. A-1.)

According to Plaintiff, "[w]hen delivered, however, the Subject Vehicle was defective in materials and workmanship." (Doc. No. 3 at 2.) Specifically,

> [s]hortly after the purchase, Plaintiff noticed defects in the vehicle and returned the vehicle to Authorized Dealerships to repair the defects on at least four (4) occasions … [defects] include[ed]: transmission making noise despite numerous repair attempts, loud pop heard when driver went to high side, shifter will not go to high side, front steer breaks squealing, driveline out of alignment, vehicle rides very rough, vibration in vehicle, and noise at idle.

(Doc. No. 3 at 2–3; *see* Doc. No. 3 Ex. B.)

Due to the needed repairs, the Subject Vehicle was out of service for at least seventy-five (75) days when Plaintiff filed its Complaint. (*Id.* at 3.) "Despite the prolonged time during which the Subject Vehicle has been out-of-service, Authorized Dealerships have failed to repair the Subject Vehicle so as to bring it into conformity with the [PACCAR and Cummins] warranties." (*Id.*) "[M]any non-conforming and defective conditions were not repaired and still exist…. [This] include[es] transmission defects." (*Id.*) Additionally,

> Plaintiff directly notified Defendants of the defective conditions of the vehicle on numerous occasions and that he revoked acceptance of the vehicle, rescinded the purchase agreement and desired a buy-back of the Subject Vehicle, wherein Defendants have failed and refused to rescind the contract or to buy back Plaintiff's defective Vehicle and to reimburse Plaintiff pursuant to his rights under Colorado and Federal Laws.

(*Id.* (citing *Id.* Ex C; *Id.* Ex D).)

On the basis of these allegations, Plaintiff filed a Complaint in Arapahoe County Court on May 26, 2022. Plaintiff alleges three causes of action: (1) breach of factory warranty; (2) breach of Magnuson-Moss Warranty Act; and (3) breach of implied warranty.[5] On June 29,

---

[5] Plaintiff attempted to amend its Complaint on August 1, 2022. (Doc. Nos. 12; 13.) However, the Court struck this attempted amendment for failure to comply with D.C.COLO.LCivR 15.1. (Doc. No. 16.) Additionally, during a September 20, 2022, status conference in this matter,

2022, Defendant PACCAR removed this action to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 (Doc. No. 1.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled

---

Plaintiff stated its intent to move for leave to amend its Complaint. (Doc. No. 24.) However, no motion to amend was ever filed. Plaintiff included a claim for unjust enrichment in its now-stricken attempt at amending its Complaint, but that claim is not found in the operative Complaint. (Doc. Nos. 1; 12; 13.) Thus, insofar as Defendant Cummins' Motion to Dismiss addresses a cause of action for unjust enrichment, the Court will not consider these arguments because Plaintiff has not brought a claim for unjust enrichment. (Doc. No. 28.)

to the assumption of truth," *i.e.,* those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

Defendants have moved to dismiss all claims against them. (Doc. Nos. 10; 28.) Broadly, Defendants argue: 1) The Magnuson-Moss Warranty Act ["MMWA"] is inapplicable to the alleged facts of this case; 2) the implied warranty claim fails as a matter of law because Defendants properly disclaimed any implied warranties on the Subject Vehicle; and 3) Plaintiff has failed to state a claim for breach of an express warranty. Before addressing Plaintiff's warranty claims, the Court will first analyze the applicability of the MMWA.

## I.      Claim 2: Breach of Magnuson-Moss Warranty Act

Plaintiff's second claim for relief alleges that Defendants breached a written and implied warranty in violation of the MMWA. (Doc. No. 3 at 4–6); 15 U.S.C. §§ 2301–12. "The Magnuson-Moss Warranty Act establishes minimum standards for express and implied warranties for goods and offers consumers remedies when the warranties are found to be inadequate." *Ruelas v. Freightliner, LLC*, 2008 WL 552445, at *3 (E.D. Cal. Feb. 27, 2008).

Regarding remedies, the MMWA creates a private right of action for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). Importantly, the MMWA "applies only to warranties that pertain to *consumer* products." *Ruelas*, 2008 WL 552445, at *3 (emphasis added) (citing 15 U.S.C. § 2302(e)); *see also* 15 U.S.C. § 2301(3) ("The term "consumer" means a buyer … of any consumer product ...."). A "consumer product" is defined as "any tangible personal property which is distributed in commerce *and which is normally used for personal, family, or household purposes*." 15 U.S.C. § 2301(1) (emphasis added).

Here, Defendants contend that the Court must dismiss Plaintiff's MMWA claim because the Subject Vehicle is not a "consumer product"—and thus Plaintiff is not a "consumer"—as defined by the MMWA. (Doc. No. 10 at 3–5; Doc. No. 28 at 8–11.) Plaintiff, for its part, alleges that the Subject Vehicle indeed is a consumer product, and, consequently, Plaintiff is a consumer, without providing any supporting details. (Doc. No. 3 at 5.)

To determine whether a warrantied product is a "consumer product" under the MMWA, Courts must analyze how the product is "normally used." 15 U.S.C. § 2301(1). This objective review incorporates the "common sense understanding of the product." *Eversole v. Ford Motor*

*Co.*, 2012 WL 1161420, at *5 (E.D. Va. Apr. 6, 2012). Accordingly, though the Court notes the Complaint does not identify how Plaintiff intended to use the Subject Vehicle, its "subjective purpose for purchasing the truck is irrelevant." *Id.*

Here, the Subject Vehicle "is a Model 389 Peterbilt designed and manufactured to haul a semi-trailer via a fifth wheel." (Doc. No. 10 Ex A at ¶ 3.) That is, the Subject Vehicle is a tractor-trailer normally and ordinarily used in commerce to haul goods and products over the road. Under this definition, the Subject Vehicle cannot be considered a "consumer product" under the MMWA, considering the common sense understanding of such a product. Simply stated, the Subject Vehicle is not ordinarily "used for personal, family, or household purposes." 15 U.S.C. § 2301(1). Indeed, courts considering MMWA claims involving tractor-trailers have routinely found the same. *See Delgado v. Peterbilt Motors Co.*, 2022 WL 4378819, at *5 (E.D. Mo. Sept. 22, 2022) (concluding that "a tractor trailer does not fall within the MMWA" and collecting several cases finding the same); *Kwiatkowski v. Volvo Trucks N.A., Inc.*, 500 F. Rupp. 2d 875, 877 (N.D. Ill. 2007) ("The normal and ordinary purpose for [a tractor-trailer] is to haul trailers in transport of goods and products over long distances for commercial benefit. Such a vehicle is not a 'consumer product' and therefore beyond the reach of the [MMWA]."); *see also Sylvania Twp. Bd. of Trustees v. Kovatch Mobile Equip. Corp.*, 878 F. Supp. 2d 857 (N.D. Ohio 2012) (finding that a fire engine was not a consumer product under the MMWA).

The MMWA is thus inapplicable to Plaintiff's allegations. The Court consequently recommends dismissing this claim.

## II.    Claim 3: Breach of an Implied Warranty

Plaintiff's third claim for relief alleges that Defendants breached an implied warranty. (Doc. No. 3 at 6–7.) Specifically, Plaintiff invokes the implied warranty of merchantability and the implied warranty of fitness.[6] (*Id.* at 6.) Defendants argue that the Court must dismiss this claim because both warranty agreements properly disclaimed any implied warranties concerning the Subject Vehicle.

In Colorado,

[t]he validity of disclaimer clauses … is governed by Colo.Rev.Stat. § 4–2–316(2). This demands that to exclude the implied warranty of merchantability, the language of the warranty must actually mention merchantability, must be in writing, and must be conspicuous. To exclude an implied warranty of fitness, the language must again be conspicuous but the warranty excluded need not be specifically mentioned.

*Richard O'Brien Companies v. Challenge-Cook Bros., Inc.*, 672 F.Supp. 466, 469 (D. Colo. 1987); *see also Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 646 (10th Cir. 1991) ("Colorado law requires that language purporting to exclude or modify the implied warranty of merchantability must include the word merchantability and, in case of a writing, be conspicuous." (citing Colo. Rev. Stat. § 4–2–316(2)); *Haynes Mech. Sys., Inc. v. Bluon Energy, LLC*, No. 18-CV-03004-KLM, 2021 WL 3128652, at *10 (D. Colo. July 23, 2021) ("To exclude the implied warranty of fitness for a particular purpose, the disclaimer must be by a writing and conspicuous." (citing Colo. Rev. Stat. § 4–2–316(2)).

To be conspicuous, a disclaimer must be

---

[6] Claim 3 in Plaintiff's Complaint first states, "The aforementioned Subject Vehicle purchased by Plaintiff was subject to the implied warranties of merchantability …." Plaintiff then goes on to say "[s]aid warranties included … [s]aid [v]ehicle was fit for the ordinary purpose of safe, reliable transportation" and "was fit for the ordinary purpose for which goods of that type are used." (Doc. No. 3 at 6.)

written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it…. Conspicuous terms include the following: (A) A heading in capital letters equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (B) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Colo. Rev. Stat. § 4–1–201(10).

Here, Defendant PACCAR's warranty used capital letters to "EXPRESSLY DISCLAIM ANY WARRANTY FOR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Doc. No. 10 Ex. A-1.) Similarly, Defendant Cummins' warranty used capital letters and bold typeface to say, "**THIS WARRANTY AND THE EMISSIONS WARRANTY … ARE THE SOLE WARRANTIES MADE BY CUMMINS …. CUMMINS MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE**. (Doc. No. 28 Ex. A-1.) Both disclaimers were prominently displayed within the warranties, used the same or larger size font as the rest of the document, and explicitly referenced the warranties of merchantability and fitness. Additionally, neither disclaimer was hidden from view or otherwise obscured by other text or images, nor were they buried deep in an excessively long document. (*See* Doc. Nos. 10 Ex A-1; 28 Ex. A-1.) Accordingly, the Court agrees with Defendants that both disclaimers were conspicuous as required by Colo. Rev. Stat. § 4–2–316(2). *See Irwin Seating Co. v. Int'l Bus. Machs. Corp.*, 306 Fed.Appx. 239, 244 (6th Cir. 2009) (applying Colorado law) (holding disclaimer written entirely in uppercase letters was conspicuous); Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC, 166 F. Supp. 3d 684, 695 (E.D. La. 2016) (applying Colorado law) (holding disclaimer written entirely in uppercase letters and in bold typeface was conspicuous).

11

Because Defendants' implied warranty disclaimers were conspicuous and expressly disclaimed the implied warranties of merchantability and fitness, the Court recommends dismissing this claim.

## III.    Claim 1: Breach of Express Warranty

Plaintiff's first claim for relief alleges that Defendants breached the express warranties provided upon purchase by not repairing or replacing the Subject Vehicle's allegedly defective parts—as required by the warranties. (Doc. No. 3 at 4; *see* Doc. No. 10 Ex A-1; Doc. No. 28 Ex. A-1.); *see Scott v. Honeywell Int'l Inc.*, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015) ("[W]here an express warranty exists, the parties may 'limit[ ] the buyer's remedies ... to repair and replacement of nonconforming goods or parts.'" (citing Colo. Rev. Stat. § 4–2–719(1)(a)).

To state a claim for breach of express warranty, a plaintiff must allege (1) the existence of a warranty; (2) a breach of that warranty; (3) that the breach proximately caused damages; and (4) that defendant received timely notice of the breach. *Carrado v. Daimler AG*, No. 17-CV-3080-WJM-SKC, 2018 WL 4565562, at *6 (D. Colo. Sept. 24, 2018) (citing *Scott*, 2015 WL 1517527, at *3). Here, neither Defendant disputes the existence of an express warranty, the first prong of this analysis. Instead, Defendants contend that the Complaint lacks sufficient factual detail to plausibly establish the second prong of the analysis—that either Defendant breached their express warranty—and thus, the Court must dismiss the claim. (Doc. No. 10 at 6–8; Doc. No. 28 at 5–7.)

In the case of a warranty that limits a buyer's remedies to repair or replacement of a defective part, a plaintiff must "must show that the product was defective, that 'defendants had an opportunity to repair or replace the defects, that they were unable to do so, and that their

inability to effectively repair or replace substantially affected the value of the product' to plaintiff's detriment." *Scott*, 2015 WL 1517527, at *6 (citing *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 743 (Colo.1991)).

In support of its express warranty claim, Plaintiff offers somewhat vague allegations. Plaintiff first says the Subject Vehicle was "defective in materials and workmanship," at the time of purchase. Then, apparently quoting from a maintenance report, Plaintiff defines such defects as the "transmission [makes] noise despite numerous repair attempts, loud pop heard when driver went to high side, shifter will not go to high side, front steer brakes squealing, driveline out of alignment, vehicle rides very rough, vibration in vehicle, and noise at ide." (Doc. No. 3 at 2–3.) As for the steps taken to repair the Subject Vehicle, Plaintiff broadly alleges that that the vehicle was "returned … to Authorized Dealerships to repair the defects on at least four (4) occasions …" (*Id.* at 2.) Plaintiff also attaches certain maintenance reports to the Complaint but does not describe the timeline of events nor explain the contents of these reports.[7] (*Id.* Ex A–B.) Plaintiff concludes by claiming that Defendants have failed to repair these defects in violation of their warranties. As a result, the Subject Vehicle had been out of service for "at least seventy-five (75) total days …." (*Id.* at 3.) Plaintiff does not explain exactly why or how the Subject Vehicle continued to be in disrepair at the time of the Complaint, or the exact extent any disrepair impacted the value of the Subject Vehicle.

After review, the Court finds these allegations too vague to plausibly establish that Defendants have breached their warranties. First, as Defendants note, many of the "defects"

---

[7] The Court also notes that some of the attached maintenance reports are very difficult to read due to photocopying issues.

alleged only provide a broad description of an issue, without establishing that a part covered by a warranty—and if so, whose warranty—is the culprit.[8] Indeed, as pointed out by Defendant Cummins, the Complaint is entirely devoid of a specific allegation that a problem exists with the Subject Vehicle's engine. (*See* Doc. No. 28 at 7.) And the attachment of maintenance reports, with little explanation in the Complaint, adds only minimal support to Plaintiff's claims.[9] Further, the timeline of events and the steps taken or not taken to address the alleged defects are somewhat unclear. Even whether or not a defect that once existed had been repaired before Plaintiff filed the Complaint, is challenging to discern. *See Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1272 (10th Cir. 2020) (saying that evidence a "seller cannot cure defects by repeated repair attempts" is necessary to show a repair and replace warranty has failed its "essential purpose" (citing *Curragh Queensland Mining Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 241 (Colo. App. 2002)). Thus, even though Plaintiff *does* make claims about certain specific parts— such as the transmission—the Court cannot say that Plaintiff has made sufficient allegations to support a breach by either Defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that to survive a motion to dismiss, "the court [must be able] to draw the reasonable inference that the defendant is liable for the misconduct alleged").

---

[8] E.g., "loud pop heard when driver went to high side … vehicle rides very rough, vibration in vehicle and noise at idle." (Doc. No. 3 at 2–3.)

[9] The reports also seem to contradict Plaintiff's claims in some instances. For example, the attached March 2, 2022, maintenance report from Rush Truck Centers—ostensibly the final inspection before this suit was filed—states that Plaintiff returned the Subject Vehicle to the shop "2 weeks" after all problems appeared to have been fixed because Plaintiff believed the same issues had returned. (Doc. No. 3 Ex. B.) However, the mechanic wrote he "could not verify customer complaint," detailed various parts that he checked without discovering a defect, and stated that he test-drove the Subject Vehicle and could not corroborate Plaintiff's complaints. (*Id.*)

However, unlike Plaintiff's other two claims, its claim for breach of an express warranty does not suffer from a clear legal flaw that necessitates its dismissal. Instead, Count I merely fails to reach the threshold of a plausible allegation—an issue that additional supporting factual allegations could cure. For this reason, the Court recommends dismissing this claim without prejudice, giving Plaintiff leave to re-allege the claim should it be in a position to plausibly do so.

## CONCLUSION

Accordingly, the Court **RECOMMENDS granting** the Motions to Dismiss (Doc. Nos. 10; 28) **in part** in the following manner:

1. The Court recommends dismissing Plaintiff's claim for breach of the Magnuson-Moss Warranty Act and Plaintiff's claim for breach of an implied warranty with prejudice.

2. The Court recommends dismissing Plaintiff's claim for breach of an express warranty *without prejudice*.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 19 day of December, 2022.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge